## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

BIMINI SUPERFAST OPERATIONS LLC )
d/b/a RESORTS WORLD BIMINI )
SUPERFAST CRUISES BAHAMAS, )
 )
BIMINI SUPERFAST LIMITED, and )
 )
BIMINI SUPERFAST CHARTER LIMITED, )
 )
     Plaintiffs, )     **Case No. _____**
 )
v. )
 )
THE HON. THOMAS S. WINKOWSKI, )
in his official capacity as Acting Commissioner of )
U.S. Customs and Border Protection, and )
 )
U.S. CUSTOMS AND BORDER PROTECTION, )
 )
     Defendants. )

## COMPLAINT

Plaintiffs Bimini Superfast Operations LLC d/b/a Resorts World Bimini Superfast Cruises Bahamas, Bimini Superfast Limited, and Bimini Superfast Charter Limited (collectively, "Resorts World Bimini"), by counsel, respectfully state as follows for their Complaint against Defendants, The Hon. Thomas S. Winkowski, in his official capacity as Acting Commissioner of U.S. Customs and Border Protection (the "Commissioner"), and U.S. Customs and Border Protection (the "Agency") (collectively, "CBP").

## NATURE OF ACTION

1.     The laws and regulations that the Agency enforces include the Passenger Vessel Services Act of 1886, 46 U.S.C. § 55103 (the "PVSA") and various immigration laws. The immigration laws enforced by the Agency include the Immigration and Nationality Act, 8 U.S.C.

1

§ 1101 *et seq.* (the "INA").   Over the past several decades, the Agency has issued numerous rulings under the PVSA allowing "non-coastwise qualified" vessels to operate so-called "cruises to nowhere" from U.S. ports.  A vessel is ***not*** "coastwise qualified" unless it was built in and is registered in the U.S.  46 U.S.C. § 55108(a)(1); 46 U.S.C. § 12101 *et seq.*  A "cruise to nowhere" is one that departs and returns without stopping at any port of call.

2.       Over the past several decades, the Agency has issued numerous rulings pursuant to the PVSA permitting non-coastwise qualified vessels to operate cruises to nowhere from U.S. ports so long as the vessel enters international waters.  The non-coastwise vessels that have been permitted to operate such cruises to nowhere have, by and large, been manned with crews whose members are neither U.S. citizens ("USCs") nor lawful permanent residents of the United States ("LPRs").  Prior rulings by the Agency permitting non-coastwise vessels to operate cruises to nowhere are available online via the Customs Rulings Online Search System ("CROSS"), located at the URL http://rulings.cbp.gov/index.asp.  Screen shots of CROSS search results for the terms "cruise to nowhere" and "voyage to nowhere" (the "CBP Prior Rulings") are attached as **Exhibit A**.

3.       Pursuant to the CBP Prior Rulings, numerous cruise lines have been operating cruises to nowhere from U.S. ports.  Examples include the following that were in operation at least as far back as 1989:

     a.       Crown Cruise Line, which operated cruises to nowhere from Palm Beach, Florida (Georgina Cruz, *South Florida Ports: Anchors Away*, SUNSENTINEL (March 19, 1989), *available at* http://articles.sun-sentinel.com/1989-03-19/features/8901150465_1_chandris-fantasy-cruises-carnival-cruise-lines-tropicana-cruises#>Crown);

b.  Discovery Cruises, which operated a cruise to nowhere from Miami, Florida (Georgina Cruz, *South Florida Ports: Anchors Away*, SUNSENTINEL (March 19, 1989), *available at* http://articles.sun-sentinel.com/1989-03-19/features/8901150465_1_chandris-fantasy-cruises-carnival-cruise-lines-tropicana-cruises#>DiscoveryCruises);

c.  Sea Escape Limited, which operated a cruise to nowhere from Port Everglades and Miami, Florida (Georgina Cruz, *South Florida Ports: Anchors Away*, SUNSENTINEL (March 19, 1989), *available at* http://articles.sun-sentinel.com/1989-03-19/features/8901150465_1_chandris-fantasy-cruises-carnival-cruise-lines-tropicana-cruises#>Limited); and

d.  Tropicana Cruises, which operated a cruise to nowhere from Miami, Florida (Georgina Cruz, *South Florida Ports: Anchors Away*, SUNSENTINEL (March 19, 1989), *available at* http://articles.sun-sentinel.com/1989-03-19/features/8901150465_1_chandris-fantasy-cruises-carnival-cruise-lines-tropicana-cruises).

4.  Pursuant to the CBP Prior Rulings, numerous cruise lines now operate or plan to operate cruises to nowhere from U.S. ports.  Examples include the following:

a.  Norwegian Cruise Line, which operates cruises to nowhere from New Orleans and New York City (*Weekend Cruises: Overview*, NORWEGIAN CRUISE LINE, http://www.ncl.com/cruise-destination/weekend/overview (last visited Nov. 26, 2013 ) (follow "One Nighter Cruises" hyperlink or "Weekend Getaway Cruises" hyperlink));

4818-9250-3319.7

b.      Disney Cruise Line, which will operate cruises to nowhere from San Diego in 2014 (*Cruises*, EXPEDIA, http://cruise.expedia.com/Itinerary5.aspx?item=533438 &tpid=1&eapid=0 (last visited Nov. 26, 2013) (select Destination "cruise to nowhere" and Cruise Line "Disney")); and

c.      Royal Caribbean Cruises, which will operate a cruise to nowhere from Bayonne, New Jersey in 2014 (*Cruises*, AFFORDABLETOURS.COM, http://cruises.affordabletours.com/search/advanced_search/?destination=37&depa rturedate=&cruiseline1=7&ship1=&numnights=0&dport1=90&resident=0&x=51 &y=4 (last visited Nov. 26, 2013) (select Cruise Destination "cruise to nowhere," Cruise Line "Royal Caribbean" and From Port "Bayonne, New Jersey")).

5.      Of the foregoing cruises to nowhere, all were, are, or will be operated on non-coastwise vessels whose crew members are, by and large, not USCs or LPRs.  Former gaming cruises to nowhere include SeaEscape, which operated for years out of Port Everglades, Florida; Palm Beach Princess, which operated out of Palm Beach, Florida; and Sterling, which operated out of Port Canaveral, Florida. All were foreign-flagged vessels with foreign crews.

6.      In an effort to compete with operators such as the foregoing, and in reliance upon the CBP Prior Rulings, Resorts World Bimini began planning for and investing in its own cruise to nowhere in May 2013.  On September 16, 2013, Resorts World Bimini began operating its own cruise to nowhere from Miami (the "RWB Miami Cruise to Nowhere").  Thereafter, on October 28, 2013, the Agency informed Resorts World Bimini orally that it could not operate the RWB Miami Cruise to Nowhere using foreign crew members because of the INA.  The CBP Prior Rulings had not raised any issues regarding the status of foreign crews under the INA.

7.      The Agency's oral communication to Resorts World Bimini was later formalized in writing by letter dated October 30, 2013, a copy of which is attached as **Exhibit B** (the "Initial Agency Decision").  The Initial Agency Decision gave Resorts World Bimini only four days to comply with the Agency's new mandate.  To make matters worse, compliance with the Initial Agency Decision would put Resorts World Bimini in violation of other other legal obligations. For example, crew members on the RWB Miami Cruise to Nowhere have one-year contracts as required by the Maritime Labor Convention.

8.      On November 4, 2013, representatives of Resorts World Bimini met with officials from the Agency's Miami office.  During the meeting, Resorts World Bimini requested clarification of the Initial Agency Decision and the appeal process.  Resorts World Bimini also requested a stay pending appeal.  During the course of the November 4, 2013 meeting, Resorts World Bimini delivered to the Agency a letter appealing the Initial Agency Decision ("RWB's Appeal").  A copy of RWB's Appeal is attached as **Exhibit C**.

9.      Following the November 4, 2013 meeting, Resorts World Bimini sent the Agency the correspondence attached as **Exhibit D** (the "Request for Stay of Initial Decision").  The Request for Stay of Initial Decision asked the Agency to permit operation of the RWB Miami Cruise to Nowhere pending appeal.

10.     By letter dated November 7, 2013, a copy of which is attached as **Exhibit E** (the "Final Agency Action"), the Agency denied RWB's Appeal and the Request for Stay of Initial Decision.  The Final Agency Action gave Resorts World Bimini until November 28, 2013 to cease operation of the RWB Miami Cruise to Nowhere.

11.     On November 22, 2013, representatives of Resorts World Bimini met with officials of the Agency at its headquarters in Washington, D.C. to try to secure reconsideration of

4818-9250-3319.7

the Final Agency Action.  The officials of the Agency with whom Resorts World Bimini met in Washington, D.C. upheld the Final Agency Action that had been issued by the Agency's Miami office.  Nor was the Agency willing to stay the effectiveness of the Final Agency Action while Resorts World Bimini seeks judicial review.  Unless stayed, the Final Agency Action thus requires Resorts World Bimini to cease operation of the RWB Miami Cruise to Nowhere by tomorrow, November 28, 2013.

12.     As a result of the Final Agency Action, Resorts World Bimini has already been forced to cancel previously scheduled voyages of the RWB Miami Cruise to Nowhere.  Resorts World Bimini has also been prevented from scheduling future voyages of the RWB Miami Cruise to Nowhere for the holiday season, including New Year's Eve.  Meanwhile, competing cruise lines continue to operate their cruises to nowhere without interference from the Agency.  Besides losing revenue, Resorts World Bimini is suffering injury to relationships with existing and prospective customers.  This injury will continue unless and until the effectiveness of the Final Agency Action is stayed pending judicial review.

13.     By virtue of the CBP Prior Rulings, upon which Resorts World Bimini relied, the Agency cannot change its interpretation of the PVSA and the INA unless it first complies with the procedural requirements of the Administrative Procedure Act, 5 U.S.C. §§ 551-706 (the "APA").  The APA prohibits the Agency from enforcing its newfound interpretation of the PVSA and INA unless and until it publishes its new interpretation as a final rule after undertaking notice and comment rulemaking under 5 U.S.C. § 553 ("APA Section 553")—the "informal rulemaking" provision of the APA.

14.     On the merits, the Final Agency Action is incorrect and unprecedented.  The Agency's interpretation of the INA reflected in the Final Agency Decision has, in effect, nullified

6

the Agency's longstanding practice and interpretation of the PVSA as reflected in, *inter alia*, the CBP Prior Rulings.

15.     At this juncture, Resorts World Bimini has exhausted all administrative remedies. By way of this complaint, Resorts World Bimini therefore seeks judicial review pursuant to 5 U.S.C. § 706 ("APA Section 706") and preservation of the status quo pending judicial review pursuant to 5 U.S.C. § 705 ("APA Section 705").

## PARTIES

### (Resorts World Bimini)

16.     Plaintiff Bimini Superfast Operations LLC d/b/a Resorts World Bimini Superfast Cruises Bahamas ("RWB Operations") is a limited liability company organized under the laws of the State of Delaware with its principal place of business located at 1501 Biscayne Boulevard, Suite 107, Miami, Florida 33132-1460.   RWB Operations operates the RWB Miami Cruise to Nowhere.

17.     Plaintiff Bimini Superfast Limited ("RWB Limited") is a private limited liability company organized under the laws of the Isle of Man.   RWB Limited owns the vessel used to operate the RWB Miami Cruise to Nowhere.

18.     Plaintiff Bimini Superfast Charter Limited ("RWB Charter") is a private limited liability company organized under the laws of the Isle of Man.   RWB Charter is ultimately responsible for the management of RWB Operations and RWB Limited.

### (CBP)

19.     The Agency is a federal agency within the United States Department of Homeland Security.   The Agency is located at 1300 Pennsylvania Avenue, N.W., Washington, D.C. 20229.

20.     The Commissioner is the Acting Commissioner of U.S. Customs and Border Protection.   The Commissioner's office is located within the Agency at 1300 Pennsylvania

Avenue, N.W., Washington, D.C. 20229.  The Commissioner is named as a party defendant in his official capacity only.

## JURISDICTION AND VENUE

21.     This action arises under a federal statute, the APA.

22.     Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and the APA, 5 U.S.C. § 702 ("[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof").

23.     Venue is proper in the U.S. District Court for the District of Columbia pursuant to 28 U.S.C. § 1391(c) in that the CBP resides in the District of Columbia and a substantial part of the events giving rise to this claim occurred in the District of Columbia.

## FACTS COMMON TO ALL COUNTS

### (Resorts World Bimini's Operation of the RWB Miami Cruise to Nowhere In Reliance on the CBP Prior Rulings)

24.     Resorts World Bimini operates the RWB Miami Cruise to Nowhere.  Resorts World Bimini's vessel departs from Miami, cruises into international waters, and returns to Miami.  The vessel is not coastwise qualified because it was not built in the U.S. and is not registered in the U.S.  Like virtually all non-coastwise qualified vessels—indeed, like virtually all cruise ships—the vessel's crew is foreign.  In other words, most (if not all) of the crew members are neither USCs nor LPRs.

25.     CBP has the responsibility for "facilitating lawful international trade and travel while enforcing hundreds of U.S. laws and regulations, including immigration and drug laws." http://www.cbp.gov/xp/cgov/about/.  The Agency has previously issued rulings interpreting the "coastwise" provisions of the PVSA, 46 U.S.C. § 55103.  The CBP Prior Rulings allow non-

8

coastwise qualified vessels to undertake cruises to nowhere from U.S. ports so long as the voyage enters international waters.

26. In reliance on the CBP Prior Rulings, non-coastwise qualified vessels owned and operated by numerous foreign parties have for decades engaged in cruises to nowhere entering international waters from U.S. ports. As stated on its Web site, the Agency is responsible for enforcing not only the PVSA but also various immigration laws, including the provisions of the INA upon which the Final Agency Action purports to be based. Throughout the history of issuing rulings approving these cruises to nowhere by foreign vessels, however, the Agency has never raised an issue regarding foreign crews' status under the INA.

27. Vessels that are foreign built and foreign owned—*i.e.*, non-coastwise vessels— almost always have foreign crews. It would be highly extraordinary, in fact, for the crew of any non-coastwise vessel operating a cruise to nowhere from a U.S. port to include even a small number of USCs or LPRs. Virtually no cruises to nowhere from U.S. ports are operated with U.S. flagged vessels, and the crews of such vessels are invariably not UCSs or LPRs. The Agency has never sought to interfere with such cruises on the basis that crew members were not USCs or LPRs. To the contrary, the Agency has repeatedly affirmed the operators' right to operate such cruises through letter rulings such as the CBP Prior Rulings.

28. In 1993, a bill was introduced in the 103rd Congress designed to amend the PVSA to bring cruises to nowhere within the definition of "coastwise trade." H.R. 1250, 103rd Congress (1993). The Congressional Record makes clear that the specific purpose of the bill was to reverse the Agency's longstanding interpretations and practice of allowing "foreign-manned cruise ships" to conduct cruises to nowhere. For example, as Representative Jack Fields explained it:

> This bill represents a major step forward in providing American companies the opportunity to become involved in the extremely lucrative cruise-to-nowhere trade.  These voyages, which are currently conducted exclusively by foreign-owned, foreign-flagged, and foreign-manned cruise ships, represent a significant economic growth potential for American maritime companies.  ***As a result of administrative determinations—*** which the Members of the Merchant Marine and Fisheries Committee strenuously disagree with—***the U.S. Customs Service has allowed these foreign ships to continue to operate.***

139 Cong. Rec. H10,391 (Nov. 20, 1993) (emphasis added).  Similarly, Representative Gerry Studds explained:

> [U]nder an unusual interpretation by the Customs Service, if a vessel leaves a U.S. port, sails beyond the 3-mile territorial sea, and returns to the original port, then it can be foreign-flag, built in a subsidized foreign shipyard, owned by foreign citizens, and manned by low wage foreign personnel.

*Id.*

29.    The 103rd House of Representatives passed H.R 1250, but the Senate took no action on the bill.  *See generally also Casino Ventures v. Stewart*, 183 F.3d 307, 311 (4th Cir. 1999) (1992 congressional amendments to Johnson Act that "generally permit the use of gambling devices on the high seas, [but] permit states to reverse course and opt to have cruising to nowhere remain a federal crime if a state 'has enacted a statute the terms of which prohibit the use of gambling devices on such cruises'") (citing 15 U.S.C. § 1175(b)(2)(A)).

30.    As Congress recognized when it considered—but failed to enact—H.R. 1250, the view of the law reflected in the Final Agency Action would require a change in the statute.  Rather than wait for Congress to act, and rather than follow the procedures required by the APA, the Agency has—by administrative fiat—effectively amended the statutes and regulations applicable to cruises to nowhere.

31.    Resorts World Bimini justifiably relied upon the Agency's longstanding practice and interpretation of the applicable statutes and regulations as reflected in, *inter alia*, the CBP

4818-9250-3319.7

Prior Rulings.  Accordingly, Resorts World Bimini initiated the RWB Miami Cruise to Nowhere in July 2013.  At some point thereafter, however, Miami officials of the Agency informed Resorts World Bimini orally that it could not engage in such cruises to nowhere with foreign crews because of the INA.  This oral notification was followed by various written communications—culminating in the Final Agency Action of which Resorts World Bimini seeks judicial review.

**(Meetings and Subsequent Communications Culminating in
the Final Agency Action of Which Resorts World Bimini Seeks Review)**

32.     Following a meeting between representatives of Resorts World Bimini and the Agency on October 28, 2013, CBP Miami Port Director Bill Olejasz sent a letter dated October 30, 2013 to the president of Resorts World Bimini.  This Initial Agency Decision stated that Resorts World Bimini could continue operating the RWB Miami Cruise to Nowhere only if the foreign crew members were replaced by USCs or LPRs.

33.     The Initial Agency Decision stated that "CBP has consistently determined that crewmembers who possess D1 visas [*i.e.*, non-USCs and non-LPRs] are not eligible" to work on cruises to nowhere from U.S. ports.  Notwithstanding this contention, the Initial Agency Decision cited no examples of any such "consistent determinations."  The only section of the INA cited was 8 U.S.C. § 101(a)(15)(D)(i) ("INA Section 101(a)(15)(D)(i)").  INA Section 101(a)(15)(D)(i) provides an exception to the definition of the term "nonimmigrant alien."  The Initial Agency Decision concluded by noting that Resorts World Bimini could appeal in writing to Vernon Foret, Miami CBP Director of Field Operations.

34.     RWB's Appeal was contained in a letter to Mr. Foret dated November 4, 2013.  RWB's Appeal cited the long line of Agency precedents—including the CBP Prior Rulings—allowing non-coastwise-qualified foreign vessels with foreign crews to engage in cruises to nowhere from U.S. ports.

11

35.     On November 7, 2013, Mr. Foret issued the Final Agency Decision.  The Final Agency Decision denied RWB's Appeal, again based on the INA and CBP regulations interpreting the INA.  In the Final Agency Decision, Mr. Foret acknowledged that Resorts World Bimini had correctly interpreted the PVSA and the CBP Prior Rulings as allowing cruises to nowhere using foreign vessels.  Notwithstanding Mr. Foret's concession, the Final Agency Action stated that the "Miami Field Office has consistently taken the position" that cruises to nowhere from U.S. ports are legal under the INA and applicable regulations only if the crew consists of USCs or LPRs.  The Final Agency Action cited no examples of any such "consistent positions," however.

36.     While the Initial Agency Decision had cited only a definitional provision of the INA, the Final Agency Action stated that the decision was based on 8 U.S.C. § 274A ("INA Section 274A") and CBP's regulation codified at 8 C.F.R. § 214.2(d)(1).  The authority cited makes employment of unauthorized aliens unlawful (subject to certain exceptions).  The Final Agency Action concluded by noting that Resorts World Bimini could contact CBP Program Manager Stephen Maloney if Resorts World Bimini should "have any questions" but said nothing about an appeal process.

37.     Since receiving the foregoing correspondence dated October 30 and November 7, 2013, Resorts World Bimini has searched for any prior CBP decision—from the Miami office or elsewhere—taking the position regarding the INA and CBP regulations reflected in the Initial Agency Decision and the Final Agency Action.  Despite the claims in those letters that CBP (or at least the Miami office) has "consistently" espoused such a position, no such decisions have been found.  Representatives of Resorts World Bimini have also contacted the Agency's headquarters here in Washington, D.C. to ascertain where such decisions may be found.  Such contacts have

12

yielded nothing.  In short, there does not appear to be any factual basis for the Agency's repeated assertions that it has consistently interpreted the INA to bar non-USC and non-LPR crewmembers from working on cruises to nowhere.

38.     In commencing the RWB Miami Cruise to Nowhere, Resorts World Bimini justifiably relied on decades of rulings by the Agency.  These include the CBP Prior Rulings in which the Agency approved cruises to nowhere from U.S. ports into international waters for foreign vessels with crews not consisting of USCs or LPRs.  Even though the Agency throughout these decades has had the responsibility to enforce U.S. immigration laws, the Agency's practice has been to approve cruises to nowhere with vessels using foreign crews with no reference to the INA or CBP's immigration regulations.  Resorts World Bimini has in fact made a multi-million dollar investment and significant business decisions, including the employment of several hundred workers, based upon this consistent CBP practice.

39.     The Final Agency Action was issued without any prior public notice of the Agency's intent to reverse its long-standing interpretation of the PVSA and the INA.

40.     The Final Agency Action was issued without providing any prior opportunity for Resorts World Bimini or other interested parties to comment on the new interpretation.

41.     The Final Agency Action was issued without conducting or offering to conduct any prior public hearings.

42.     If allowed to stand, the Final Agency Action will have adverse effects on other operators of non-coastwise vessels with foreign crews, including the commercial cargo trade.

**APPLICABLE LAW**

**(APA Section 553 Requires the Agency to Provide Notice and Opportunity to Comment Before Revising Its Interpretation of the PVSA and INA)**

43.     APA Section 553 sets forth the notice and comment requirements applicable to proposed rulemakings.

44.     The Agency did not comply with Section 553 before issuing the Final Agency Action.

45.     The Agency cannot change its prior and longstanding practice—including the interpretation of the PVSA and the INA reflected in the CBP Prior Rulings—unless it provides notice and an opportunity to comment in accordance with APA Section 553.   *Alaska Prof'l Hunters Ass'n v. FAA*, 177 F.3d 1030, 1034 (D.C. Cir. 1999); *Paralyzed Veterans of Am. v. D.C. Arena*, 117 F.3d 579, 586 (D.C. Cir. 1997.  *See also Transp. Workers Union of Am., AFL-CIO v. Transp. Sec. Admin.*, 492 F.3d 471, 475 (D.C. Cir. 2007); *Envtl. Integrity Project v. EPA*, 425 F.3d 992, 997 (D.C. Cir. 2005); *Mortgage Bankers Assn. v. Harris*, 720 F.3d 966, 968 n.2 (D.C. Cir. 2013).

46.     "If the notice and comment rulemaking requirement applies, the agency must publish notice in the Federal Register, including information as to the 'time, place, and nature' of the proceedings; reference to the appropriate legal authority and the 'substance of the proposed rule or a description of the subjects and issues involved.'"  *Montefiore Med. Ctr. V. Leavitt*, 578 F. Supp. 2d 129, 133 (D.D.C. 2008) (citing 5 U.S.C. § 553(b)(1)-(3)).  The Agency must also "give interested persons an opportunity to participate in the rulemaking through submission of written data, views, or arguments."   *Id*. (citing 5 U.S.C. § 553(c)).   Only after these requirements are satisfied can the Agency promulgate a new rule, regulation, or interpretation.  *Id.*

14

47.     In this case, the Final Agency Action violates the APA because it constitutes a change in the agency's definitive interpretation made without following the required notice-and-comment procedures.  *See*, *e.g.*, *Alaska Prof'l Hunters*, 177 F.3d at 1034; *Shell Offshore Inc. v. Babbitt*, 238 F.3d 622, 629 (5th Cir. 2001).

48.     Before October 30, 2013, the Agency's longstanding and consistent practice under the PVSA and INA was to permit the operation of cruises to nowhere using non-coastwise vessels and foreign crews.  This prior interpretation and practice are reflected in, *inter alia*, the CBP Prior Rulings.

49.     The Final Agency Action reversed the Agency's prior and longstanding practice and definitive interpretation and should not have been issued absent compliance with the notice-and-comment rulemaking requirements of APA Section 553.

50.     Accordingly, the Agency has violated APA Section 553 through the issuance of the Final Agency Action.  The Final Agency Action is arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law.  It also was issued without observance of the procedure required by law.

**(APA Section 706 Empowers this Court to
Correct the Final Agency Action)**

51.     APA Section 706 authorizes this Court to correct the Agency's erroneous interpretation of the PSVA and the INA:

> To the extent necessary to decision and when presented, the reviewing court ***shall decide*** all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall—
>
> (1) compel agency action unlawfully withheld or unreasonably delayed; and

15

(2) hold unlawful and set aside agency action, findings, and conclusions found to be—

(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

(B) contrary to constitutional right, power, privilege, or immunity;

(C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;

(D) without observance of procedure required by law;

(E) unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute; or

(F) unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court.

In making the foregoing determinations, the court shall review the whole record or those parts of it cited by a party, and due account shall be taken of the rule of prejudicial error.

5 U.S.C. § 706 (emphasis added).

**(APA Section 705 Authorizes this Court to**
**Preserve the Status Quo Pending Judicial Review)**

52.     On its face, APA Section 705 authorized the Agency to preserve the status quo by staying the effectiveness of the Final Agency Decision.  *See* 5 U.S.C. § 705: "When an agency finds that justice so requires, it may postpone the effective date of action taken by it, pending judicial review."  On November 22, 2013, however, the Agency refused to preserve the status quo by permitting Resorts World Bimini to continue operating the RWB Miami Cruise to Nowhere pending judicial review of the Final Agency Decision.

53.     This Court is similarly empowered by APA Section 705 to preserve the status quo pending judicial review:

> On such conditions as may be required and to the extent necessary to prevent irreparable injury, the reviewing court, including the court to which a case may be taken on appeal from or on application for certiorari or other writ to a reviewing court, may issue all necessary and appropriate process to postpone the effective date of an agency action or to preserve status or rights pending conclusion of the review proceedings.

5 U.S.C. § 705.

**(The Rule 65 Factors Governing Preliminary Injunctive Relief Warrant Preservation of the Status Quo Pending Judicial Review)**

54.     Preservation of the status quo is also warranted under Federal Rule of Civil Procedure 65 as interpreted by the D.C. Circuit Court of Appeals.  *Sherley v. Sebelius*, 644 F.3d 388, 392–93 (D.C. Cir. 2011); *Davis v. Pension Benefit Guar. Corp.*, 571 F.3d 1288, 1291 (D.C. Cir. 2009); *Serono Labs., Inc. v. Shalala*, 158 F.3d 1313, 1317–18 (D.C. Cir. 1998).

55.     Notwithstanding the Supreme Court's decision in *Winter v. Natural Res. Def. Council*, 555 U.S. 7 (2008), the threat of irreparable harm remains "the ***single most important prerequisite*** for the issuance of a preliminary injunction."  11A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2948, at 135 n.12 (2d ed. 1995) (emphasis added).  *See generally Jack's Canoes & Kayaks, LLC v. Nat'l Park Serv.*, 933 F. Supp. 2d 58, 81 (D.D.C. 2013) ("'A showing of irreparable harm is the *sine qua non* of the preliminary injunction inquiry." (quoting *Trudeau v. Fed. Trade Comm'n*, 384 F. Supp. 2d 281, 296 (D.D.C. 2005)); *see also Qingdao Taifa Grp. Co., Ltd. v. United States*, 581 F.3d 1375 (Fed. Cir. 2009) (noting the importance of a showing of irreparable harm for preliminary injunctive relief in the anti-dumping context).

56.     Without the relief it seeks, Resorts World Bimini faces irreparable harm.  This harm includes injury to its reputation and loss of customer relationships pending judicial review of the Final Agency Decision.  The injury faced by Resorts World Bimini is not limited to loss of

income from cruises to nowhere that it can no longer operate.  Such losses could be difficult to quantify.  Resorts World Bimini also faces injury to its customer relationships and loss of customers altogether, including potential future bookings.  This loss is exacerbated by the fact that competitors of Resorts World Bimini are continuing to offer cruises to nowhere because they are not subject to the Final Agency Action.

57.     In contrast, the Agency would suffer no harm if ordered to stay the Final Agency Decision pending judicial review.  To the contrary, APA Section 705 specifically authorizes the Agency to preserve the status quo.  Yet the Agency refuses to abide by the procedural rules and substantive laws to which it clearly is subject.

58.     Resorts World Bimini is likely to succeed on the merits.

59.     Finally, the relief sought by Resorts World Bimini is in the public interest.  The public has an interest in regularity of agency procedures.  Moreover, the relief sought by Resorts World Bimini will protect a number more than 300 onshore jobs in which Resorts World Bimin employs USCs and LPRs.  These jobs are dependent upon the RWB Miami Cruise to Nowhere.

## COUNT ONE

### (Preservation of the Status Quo Pending Judicial Review)

60.     Resorts World Bimini hereby incorporates by reference the foregoing paragraphs as if set forth herein completely.

61.     Pursuant to APA Section 705, Resorts World Bimini seeks preservation of the status quo pending judicial review of the Final Agency Action.

62.     Pursuant to APA Section 705, preliminary injunctive relief is appropriate.

18

## COUNT TWO

### (Reversal of Final Agency Action)

63.     Resorts World Bimini incorporates the preceding paragraphs as if entirely set forth herein.

64.     Pursuant to 5 U.S.C. § 705, injunctive relief is appropriate.

65.     Pursuant to 28 U.S.C. §§ 2201-02, declaratory relief is appropriate.

66.     The Initial Agency Decision and the Final Agency Action both purport to rely on INA Section 101(a)(15)(D)(i).  INA Section 101(a)(15)(D)(i) provides that a person is not an "immigrant" within the meaning of the INA if that person is:

> an alien crewman serving in good faith as such in a capacity required for normal operation and service on board a vessel . . . who intends to land temporarily and solely in pursuit of his calling as a crewman and *to depart from the United States* with the vessel . . . on which he arrived . . . .

8 U.S.C. § 1101(a)(15)(D)(i) (emphasis added).

67.     The Agency's interpretation of INA Section 101(a)(15)(D)(1) set forth in the Initial Agency Decision and the Final Agency Action is an entirely new interpretation that is not consistent in theory or practice with the Agency's longstanding prior interpretation of the PVSA, the INA, and other applicable law as specifically applied to cruises to nowhere and more generally reflected in, *inter alia*, the CBP Prior Rulings.

68.     The Agency's newfound position is arbitrary, capricious, and contrary to law.

69.     In addition to INA Section 101(a)(15)(D)(i), the Final Agency Action also cites 8 C.F.R. § 214.2(d)(1) for the proposition that an alien who qualifies for INA Section 101(a)(15)(D)(i) treatment "may not be employed in connection with domestic flights or movements of a vessel or aircraft."  Exhibit D at 2.  Thus, the Agency's newfound position is

apparently that cruises to nowhere qualify as "domestic . . . movements" within the meaning of 8 C.F.R. § 214.2(d)(1).

70.     The Agency's newfound position is arbitrary, capricious, and contrary to the plain language of both 8 C.F.R. § 214.2(d)(1) itself and INA Section 101(a)(15)(d)(i).  In this regard, 8 C.F.R. § 214.2(d)(1) expressly incorporates INA Section 101(a)(15)(d)(i) by reference.  *See id.* (". . . this chapter shall govern the landing of crewmen as nonimmigrants of the class defined in section 101(a)(15)(D) of the Act.").  Because 8 C.F.R. § 214.2(d)(1) makes clear that the class of exempt crewmen is "defined" by INA Section 101(a)(15)(d)(i), the Agency cannot purport to use 8 C.F.R. § 214.2(d)(1) to override, clarify, or "fill gaps" in INA Section 101(a)(15)(d)(i).  In short, 8 C.F.R. § 214.2(d)(1) does not alter the statutory requirement that exempt crewmen are defined by the act of "depart[ing] from the United States."  Nor does it change the standard set forth in The Foreign Affairs Manual of the U.S. (the "FAM").  Under the FAM, the departure requirement is satisfied if crew members depart the U.S. "within 29 days at any one time." *See* 9 FAM § 41.41 N1.4, which interprets "departure" under INA Section 101(a)(15)(D) as follows:  "To qualify for D status, crewmen must intend to depart from the United States with the vessel on which they arrived or some other vessel within 29 days at any one time."     Resorts World Bimini's crew members satisfy the foregoing requirement because they  "depart within 29 days at any one time."  Moreover, they also depart the U.S. on a daily basis in connection with the daytime portion of the cruises operated by Resorts World Bimini.  After departing the U.S., the vessel clears international customs in Bimini, Bahamas before returning to Miami and disembarking (with the same vessel and same crew) approximately three hours later for the nighttime cruise to nowhere portion of the day's operations.

20

71.     Moreover, the Agency's longstanding practice to date makes clear that the phrase "domestic . . . movements" in 8 C.F.R. § 214.2(d)(1) does not refer to cruises to nowhere.  As reflected in, *inter alia*, the CBP Prior Rulings, the Agency has repeatedly and consistently permitted the operation of cruises to nowhere using non-coastwise vessels as defined under the PVSA.  Therefore, because essentially all cruises to nowhere rely on foreign crews, the only viable reading of the phrase "domestic . . . movements" in 8 C.F.R. § 214.2(d)(1) is that the term refers to and is synonymous with "coastwise trade" within the meaning of the PVSA.   Otherwise the Agency would have to restrict all "domestic . . . movements" of non-coastwise vessels with foreign crews, including much of the commercial cargo trade.

72.     The Final Agency Action is "short of statutory right" within the meaning of 5 U.S.C. § 706(2)(C) and "not in accordance with law" within the meaning of 5 U.S.C. § 706(2)(A).

73.     The Final Agency Action and the Agency's refusal to stay pending judicial review are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" within the meaning of 5 U.S.C. § 706(2)(A).

74.     The Final Agency Action and the Agency's refusal to stay pending judicial review are "unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court" within the meaning of 5 U.S.C. § 706(F).

4818-9250-3319.7

## **PRAYER FOR RELIEF**

WHEREFORE, Resorts World Bimini respectfully requests that this Court:

A. Enter preliminary injunctive relief requiring the Agency to stay the Final Agency Action pending the outcome of this judicial review;

B. Vacate and set aside the Final Agency Action;

C. Declare, adjudge, and decree that CBP violated the APA in issuing the Final Agency Action without prior notice and opportunity for public comment;

D. Declare that the Final Agency Action is arbitrary, capricious, an abuse of discretion, and/or otherwise not in accordance with law;

E. Enjoin and restrain CBP—including its agents, employees, successors, and all persons acting in concert or participating with CBP—from enforcing, applying, or implementing (or requiring others to enforce, apply, or implement) the Final Agency Action;

F. Award Resorts World Bimini its costs of litigation, including reasonable attorneys' fees; and

G. Grant Resorts World Bimini such other relief as may be necessary and appropriate or as the Court deems just and proper.

4818-9250-3319.7

Dated: November 27, 2013

Respectfully submitted,

RESORTS WORLD BIMINI

By:    s/ Michael J. Lockerby
          Counsel

Michael J. Lockerby (D.C. 502987)
Richard G. Stoll (D.C. 28001)
Benjamin R. Dryden (D.C. 983757)
Olivia Singelmann (D.C. 1016299)
FOLEY & LARDNER LLP
Washington Harbour
3000 K Street, NW, Sixth Floor
Washington, D.C. 20007-5143
(202) 672-5300
(202) 672-5399 (fax)

*Counsel for Plaintiffs*
*Bimini Superfast Operations LLC d/b/a*
*Resorts World Bimini Superfast Cruises Bahamas,*
*Bimini Superfast Limited, and*
*Bimini Superfast Charter Limited*

4818-9250-3319.7